## Finley's Executor (Shiels) v. Worley.

Jan. 28, 1944.

H. C. Gilllis and R. L. Smith for appellant.

C. B. Upton and R. L. Pope for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

On April 27, 1925, Charles Finley and Lee Worley entered into a contract reading as follows:

"This is to witness a contract between Lee Worley and Charles Finley as follows, viz:—

"The said Worley has taken, and will continue to take contracts for the sale of lands and mineral rights in the neighborhood of Cumberland Falls.

"The said Finley is to pay the said Worley the sum of Seven Dollars and a half ($7.50) per day for the time he has already spent in taking contracts and for the time he may spend hereafter in taking other contracts, together with all expenses.

"The said Finley shall furnish the money with which to pay the holders of land and Mineral Rights for contracts for sale of same taken by the said Worley.

"When the land and Mineral Rights so contracted to be sold shall be so sold the said Finley shall pay to the said Worley the sum of One Dollar and a half ($1.50) per acre on each acre so sold.

"Witness our hands this April 27th, 1925."

Worley died in 1935, and Finley in 1941. Following the latter's death this action was instituted by the former's administratrix to recover $2,100 upon the allegation that Worley had purchased for Finley under the contract more than 2,000 acres of land and mineral rights which had thereafter been sold by Finley. Appellee's proof, however, was limited to an attempt to show that 6 tracts comprising 666 and a fraction acres conveyed by Finley to his nephew, Hugh P. Finley, on July 23, 1940, had been procured by Worley for Finley under the terms of the contract; and accordingly, the sole issue submitted to the jury was whether or not the aforesaid 666 acres was a "part of the real property about which the deceased, Lee Worley, and the de-

ceased, Charles Finley contracted or contemplated in their written contract." The jury returned a verdict in favor of appellee for $999.82, the maximum award permitted by the instructions; and from the judgment entered on that verdict, this appeal is prosecuted.

Appellant's main contention is that the acreage in controversy was not acquired by Finley through contracts "for the sale of lands and mineral rights" taken by Worley under the terms of the contract; that that document related solely to options to be disposed of during a boom resulting from a contemplated railroad development, whereas, the acquisition of this particular acreage by Finley represented more or less permanent individual investments; and that in any event there was no proof that any portion of the 666 acres had been optioned by Worley pursuant to his employment under the contract.

The only testimony offered by appellee which could be considered sufficient to meet appellant's contention relative to the insufficiency of the evidence was that given over appellant's objection by Mrs. Era Singleton, Worley's daughter, who testified that she read, and read to her father, the options taken by him for Finley; that she saw them given to Finley by her father, and saw the deeds which were subsequently made to Finley pursuant to the options, and that among the options which she thus saw and read were options from Polly Jane Perry and others, W. E. S. Perry and others, Wyatt Perry and others, Susie Shelley, Henry J. Watters and wife, and Ira Perry and his wife, who, according to the deeds subsequently proven by the County Court Clerk, had conveyed to Charles Finley the 666 acres which he conveyed to his nephew on July 23, 1940. In addition to the uncertainty of this testimony arising out of the witness' inability to describe the land embraced within the options and deeds specifically mentioned further than to say that they were lands situated in McCreary County, we are met with the objection that Mrs. Singleton was an heir of Worley's, and, as such presumably, nothing in the record to the contrary, appearing, was financially interested in the outcome of the suit. Thus, as to all essential particulars, she was testifying in her own behalf concerning transactions with and acts done by, not only her deceased father, but the deceased Finley, in direct violation of

Subsection 2 of Section 606, Civil Code of Practice. It is argued for appellee that she was competent to testify to facts of which she obtained knowledge otherwise than by transactions with the deceased, namely, by reading the options and deeds; but, conceding the competency of her naked statements that she read options taken by her father for Finley from the enumerated individuals and thereafter read deeds from the individuals to Finley, such statements unaccompanied by an identification of the lands or the terms of the options, were insufficient to prove that the lands conveyed to Finley were the same lands as those described in the options, or that the options were of the character contemplated or covered by the contract.

It is further argued by appellee that six instruments produced by Finley's executor from among his papers, and introduced in evidence, show that Finley's acquisition of the acreage in question was the result of options obtained by Worley under the contract, but here again we are unable to agree. Five of the papers referred to were undertakings signed by Finley as surety, except in one instance, where no signature appears, guaranteeing the payment of $3 per acre for lands bought by Worley from some of the individuals whose names appear as grantors in the recorded deeds to Finley heretofore mentioned. One of the papers is apparently an unsigned copy of a title bond to Worley covering the land described in one of the five other instruments; but all of the papers are undated, and in none of them are the lands definitely described. The supposed acreage embraced within the five instruments guaranteeing the payment falls far short of the acreage described in the deeds; and none of the instruments was in the form of the option agreements, samples of which were introduced in evidence, employed by Worley in procuring options for Finley pursuant to the terms of the contract. It is, of course, possible that both Finley and Worley regarded the acreage conveyed to Finley by the deeds referred to as land optioned by Worley under the terms of the contract. Moreover, there are indications that Worley was instrumental in effecting some of the purchases evidenced by the deeds to Finley; but possibilities and indications cannot supply the place of proof, especially where death has sealed the lips of those who otherwise could establish or disprove their verity.

Our conclusion is that the appellant did not sustain the burden of proving the essential facts which would entitle her to a recovery, from which it follows that the court should have sustained appellant's motion for a directed verdict.

Judgment reversed for proceedings consistent with this opinion.